Precedential --- For Publication

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Appellee,<br>v.<br><br>RICARDY CHERUBIN,<br>        Appellant.<br>_____<br>UNITED STATES OF AMERICA<br>        Appellee,<br>v.<br><br>THELMA VEGA-PEGUERO,<br>        Appellant.<br>_____ | **CRIM. NO. 2001-216/223** |

## MEMORANDUM OPINION

Finch, Senior District Judge.

THIS MATTER comes before the Court on appeal from the Final Judgment and Commitment Orders entered by the Magistrate Judge as to Appellants Ricardy Cherubin ("Cherubin") and Thelma Vega-Peguero ("Vega").

The issues raised on appeal are (1) whether the trial court improperly denied the motion to suppress filed by Appellants Cherubin and Vega; and (2) whether the evidence at trial was sufficient to convict Vega of violation of 8 U.S.C. § 1325(a).

**I.      Statement of Jurisdiction**

Pursuant to Fed. R. Crim. P. 58 (g)(2)(B), "[a] defendant may appeal a magistrate judge's

judgment of conviction or sentence to a district judge within 14 days of its entry.[1] Following a bench trial, the magistrate judge entered an order finding defendant Ricardy Cherubin guilty of violating 8 U.S.C. § 1325(a) and imposed sentence on March 20, 2002. Vega was also found guilty of violating 8 U.S.C. § 1325(a) and Judgement was imposed against Vega on November 20, 2003. Timely notices of appeal were filed on behalf of Cherubin and Vega, on April 1, 2002 and December 2, 2003, respectively.

**II. Standard of Review**

Upon appeal of a magistrate judge's judgment of conviction or sentence, a "defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58 (g)(2)(D). "The standard of review for the denial of a motion to suppress is multi-tiered; [the trial court's] findings of fact are reviewed for clear error, while the application of law to these facts is reviewed de novo. *United States v. Simmons*, 2007 WL 3122169, *2 (3d Cir. 2007) (citing *United States v. Givan*, 320 F.3d 452, 458 (3d Cir.2003)).

"In reviewing a challenge to the sufficiency of the evidence," the appellate court applies a "particularly deferential" standard of review. *United States v. Reyeros*, 537 F.3d 270, 277 (3d Cir. 2008) (citing *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir.2002) (internal quotes omitted). The court does not weigh the evidence or decide the credibility of the witnesses but instead views the evidence in the light most favorable to the Government and will sustain the verdict if any rational trier of fact could have found the elements of the crime beyond a

---

[1] When this appeal was filed on April 1, 2002 on behalf of Ricardy Cherubin, and on December 2, 2003 on behalf of Thelma Vega, the time to appeal was 10 days. See Fed. R. Crim P. 58 (g) (2) (B) (2002).

reasonable doubt. *Reyeros*, 537 F.3d at 277. Moreover, "[t]o sustain the [fact-trier's] verdict, the evidence does not need to be inconsistent with every conclusion save that of guilty." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (quotation omitted). "There is no requirement . . . that the inference drawn by the [trier of fact] be the only inference possible or that the government's evidence foreclose every possible innocent explanation." *Iafelice*, 978 F.2d 92, 97 n.3 (3d Cir. 1992) (citations omitted).

### III. Factual and Procedural Background

On July 10, 2001, a one-count information was filed against Cherubin and Vega, charging both with entry without inspection, in violation of 8 U.S.C. § 1325(a). On December 7, 2001, a suppression hearing was held as to both Appellants and the testimony of that hearing was adopted as trial testimony. The testimony given by INS Special Agents Kurt D. Thomas and Thomas Gordon at the suppression hearing established the following facts.

On July 10, 2001, at approximately 6:15 a.m., the Virgin Islands Police Department (VIPD) on St. John received a call from a concerned citizen indicating that a large number of people "looking wet and carrying bags" were observed walking along North Shore Road in the vicinity of Francis Bay and Trunk Bay. (App. 29, 40.) The VIPD investigated and took custody of approximately 25 individuals sometime between 6:15 and 6:45 a.m. (App. 40.) At 7:00 a.m., the VIPD, Zone "D" command contacted the INS in St. Thomas and informed them that 25 suspects were in custody. In response to the call from the VIPD, Special Agent Thomas and three other INS agents took a 9:00 a.m. ferry from St. Thomas and arrived at 9:20 a.m. in St. John. (App. 27-28). The VIPD gave the INS an arrest report that indicated the number of suspects detained and the Trunk Bay location where they were found, but did not list any names

3

or citizenship information. (App. 41.) The INS agents did not immediately question the suspects but took custody of them, including Cherubin and Vega, and transported them by ferry to the INS office at Nisky Center in St. Thomas. (App. 31.) Upon arrival at approximately 11:00 a.m., questioning of the detainees began. Agent Thomas testified that he read Vega her Miranda rights at Nisky Center prior to obtaining any statements, and that she waived her rights. (App. 33-38.) Vega admitted that she entered the United States from St. Martin by boat without appearing before an immigration officer and stated that she was a citizen of the Dominican Republic and was born in the Dominican Republic. (App. 39.) Agent Thomas reported that Vega told him both of her parents were from the Dominican Republic but that she had an ancestor born in Puerto Rico. Thomas could not recall if the ancestor was her mother or grandmother or somebody else. (App. 41-42.) Cherubin was also questioned at Nisky Center and he confessed through a Haitian Creole interpreter that he was a Haitian citizen who entered without inspection. (App 48-49.)

While the matter was pending, Vega absconded from pre-trial release and a warrant for her arrest issued on February 1, 2002. On March 13, 2002, the magistrate judge entered a guilty verdict against Cherubin and Vega. (App. 66-77.) However, because of Vega's absence from the proceedings, the magistrate issued an order vacating the guilty verdict against Vega. On April 5, 2002, the magistrate sentenced Cherubin to time served and a $10 special assessment was remitted. On May 22, 2003, Vega filed a Motion to Reconsider Denial of Defendant's Motion to Suppress. On November 20, 2003, Vega was returned on the arrest warrant and on that date and on consent, she withdrew her motion and the guilty verdict was reinstated. Each appellant filed a timely notice of appeal.

## IV. Discussion

### A. Motion to Suppress

Appellants contend that the magistrate improperly denied their motion to suppress on the following grounds: (1) the detention was not a valid Terry stop; (2) the Territorial police lacked authority to arrest the defendants for civil immigration violations; and (3) the arrest was unlawful because the Territorial police had no probable cause to believe a misdemeanor had been committed in their presence and no probable cause to believe a felony had been committed.

#### 1. Validity of Terry Stop

Appellants argue that a Terry Stop is only valid when police believe that the suspect is committing or about to commit a felony and suggest that a Terry stop is impermissible in the context of a misdemeanor, in particular when that misdemeanor has been completed. Defendants argue that "entry" into the United States is complete as soon as the alien hits dry land, citing the Third Circuit case, *United States v. DiSantillo*, 615 F.2d 128, 135 (3d Cir. 1980).[2] Thus, the Defendants conclude that when Cherubin and Vega were observed by the VIPD, the misdemeanor violation had been completed. Defendants further contend that the VIPD lacked authority to detain the Appellants for four hours during a Terry stop and that even if the length of time was defensible, VIPD lacked reasonable suspicion to believe that the Appellants were illegal aliens.

A brief detention or Terry stop is permitted under the Fourth Amendment "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v.*

---

[2] In *DiSantillo*, the court found that re-entry after deportation is complete at the moment the persons enters, and is not a continuing offense. *Id*. at 135.

*Johnson*, 592 F.3d 442, 447 (3d Cir. 2010) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). A Terry stop may also be permissible when the criminal act giving rise to reasonable suspicion is completed. *United States v. Hensley*, 469 U.S. 221, 229 (1985) ("if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony then a Terry stop may be made to investigate that suspicion."). *See also United States v. Brown*, 448 F.3d 239, 244 n.7 (3d Cir. 2006) (applying the Terry analysis to a stop after an attempted robbery in reliance on *Hensley*) (citing *Hensley*, 469 U.S. at 229)). Appellants conclude that under *Hensley*, the police power to conduct a Terry stop is limited to completed felonies. However, the *Hensley* court declined to determine the scope of completed crimes for which a Terry stop was permissible. *Hensley*, 469 U.S. at 229 ("We need not and do not decide today whether Terry stops to investigate all past crimes, however serious, are permitted."). Moreover, several circuits have refused to adopt the standard articulated by Appellant. *See, e.g., United States. v. Hughes*, 517 F.3d 1013, 1017 (8th Cir. 2008) ("[T]his court declines to adopt a per se rule that police may never stop an individual to investigate a completed misdemeanor. To determine whether a stop is constitutional, this court must balance the "nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion.") (citing *Hensley*, 469 U.S. at 228)); *United States v. Grigg*, 498 F.3d 1070, 1081 (9th Cir. 2007) ("[W]e decline to adopt a per se standard that police may not conduct a Terry stop to investigate a person in connection with a past completed misdemeanor simply because of the formal classification of the offense. We think it depends on the nature of the misdemeanor."); *United States v. Moran*, 503 F.3d 1135, 1141 (10th Cir. 2007) (determining the constitutionality of an investigatory stop of a completed

misdemeanor by balancing "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion'") (quoting *Hensley*, 469 U.S. at 228); *but see Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 771 (6th Cir. 2004) ("Police may . . . make a stop when they have reasonable suspicion of a completed felony, though not of a mere completed misdemeanor.") (citing *Hensley*, 469 U.S. at 229)).

This Court finds the majority position persuasive. As the Eighth Circuit stated, "the Supreme Court has consistently "eschewed bright-line rules [under the Fourth Amendment], instead emphasizing the fact-specific nature of the reasonableness inquiry."" *Hughes*, 517 F.3d at 1017 (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). Rather than adopt the per se rule articulated by the Sixth Circuit, this Court adopts the position that in determining whether such investigatory stops are permissible the court should balance "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Id*. (citing *Hensley*, 469 U.S. at 228).

With regard to the length of time detained, there is also no "bright line" rule and "common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Brevity is an important consideration, but authorities must be allowed to "graduate their responses to the demands of any particular situation." *United States v. Place*, 462 U.S. 696, 709-10 n.10 (1983). In assessing the reasonableness of the duration of the detention, "it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686 (citations omitted). *See also United States v. Leal*, 235 Fed. Appx. 937, 941 (3d Cir. 2007) ("In considering whether a

stop is "so minimally intrusive as to be justifiable on reasonable suspicion . . . courts consider the duration of the stop, the law enforcement purposes justifying the stop, whether the police diligently sought to carry out those purposes given the circumstances, and alternative means by which the police could have served their purposes" (citations omitted)). Moreover, as the Supreme Court has counseled, "the court should not indulge in unrealistic second-guessing" of police response to a developing situation. *Sharpe*, 470 U.S. at 686. "The fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable." *Id*. at 686-87 (citations and internal quotations omitted).

Courts have upheld an investigatory stop that endured more than a few moments where the delay was deemed reasonable. *See e.g.,United States v. Montoya de Hernandez*, 473 U.S. 531, 542-43 (1985) (finding a detention of suspect for almost 16 hours not unreasonable where detention occurred at an international border and suspect believed to have smuggled drugs in her alimentary canal)*; Leal,* 235 Fed. Appx. at 942 (upholding 80 minute detention while canine unit was deployed to sniff suspect's luggage ); *United States v. Soto-Cervantes,* 138 F.3d 1319, 1324 (10th Cir. 1998) ("The fifteen to twenty minute detention necessary to allow INS officers to reach the scene was not unreasonable") (citations omitted).

The Court finds that the VIPD officer did not violate the Fourth Amendment rights of Appellants. When the police observed a group of approximately 25 individuals who were wet and walking along the road carrying bags, they had reasonable suspicion to believe that the individuals had entered the United States illegally, which was at minimum, a misdemeanor offense. Moreover, even if the VIPD could only establish reasonable suspicion of a completed misdemeanor rather than a felony, a Terry stop of the suspects was permissible because the

interests of the United States in securing its borders outweighed the intrusion on the personal rights of Appellants when they were temporarily detained. *Hughes*, 517 F.3d at 1017. The Court also finds that the length of time the Appellants were detained pursuant to a Terry stop was reasonable. The police acted diligently in contacting the INS officers as soon as they had investigated the tip and detained the suspects. The INS officials then moved expeditiously to travel to St. John and then return to St. Thomas to conduct interviews with the detainees. The Court disagrees with the Appellants that the length of detention turned the Terry stop into an arrest because, under these facts, the delay was justifiable. *See Farag v. United States,* 587 F. Supp. 2d 436, 456 (E.D.N.Y. 2008) (quoting *Sharpe*, 470 U.S. at 687) ("where there has been "delay *unnecessary* to the legitimate investigation of the law enforcement officers" the detention cannot be justified under Terry, and it becomes a de facto arrest.") (emphasis added).

In sum, the Court concludes that the police officers had the requisite reasonable suspicion to detain the Appellants, and that the detention of the Appellants, while unusually lengthy for Terry purposes, did not evolve into a de facto arrest requiring probable cause. Because the Court concludes that the detention of Appellants did not constitute an arrest, it does not reach the issue of whether the VIPD police lack authority to arrest individuals suspected of illegal entry into the United States.

**B. Insufficiency of the Evidence**

Vega claims that the magistrate's denial of her Rule 29 motions was improper because the Government failed to prove her alienage beyond a reasonable doubt.

Section 1325(a) provides:

"Any alien who (1) enters or attempts to enter the United States at any time or place other

> than designated by immigration officers . . . shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both. "

8 U.S.C. § 1325(a).

Vega told Agent Thomas that she was a citizen and national of the Dominican Republic, that the boat captain was a Haitian man whom she paid $1000 to transport her from St. Martin to St. John, and that she entered the United States without inspection at St. John. (App. 39.) Those statements are sufficient to show that (1) Vega was an alien; and (2) that she attempted to enter the United States without inspection. Vega, relying on her statement to Agent Thomas that her mother, grandmother or some other ancestor was born in Puerto Rico, argues that the Government had the burden of proving that she was not a derivative citizen, since children of United States citizens may in certain circumstances be United States citizens.[3]

Notwithstanding Vega's allusion to a family member who was born in the United States, the evidence is sufficient to sustain the verdict. Even if Vega's assertion were accurate, the fact that an ancestor was born in the United States does not automatically confer U.S. citizenship on Vega. For example, under the statute cited by Vega, there is a residency requirement for the parent. 8 U.S.C. § 1401(g). Vega failed to testify at trial to clarify which family member had

---

[3]In support of this argument, Vega cites 8 U.S.C. § 1401 (g), which provides that a person shall be a national and citizen of the United States at birth when

> a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years.

8 U.S.C. § 1401 (g).

been born in Puerto Rico, and other relevant details. Of course, the burden was not on Vega to disprove the charge, but without such testimony, the magistrate was forced to rely on the testimony of Agent Thomas as to Vega's alleged U.S. citizen ancestor, which, in the context of the other evidence against Vega, was insufficient to undermine the verdict. As noted above, the evidence at trial need not "foreclose every possible innocent explanation," *Iafelice*, 978 F.2d at 97 n.3, or "be inconsistent with every conclusion save that of guilty." *Gonzalez*, 918 F.2d at 1132. Instead, the verdict will be sustained, if the evidence, "viewed in the light most favorable to the Government," persuade the Court that "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Reyeros*, 537 F.3d at 277. That standard has been met here.

## V. Conclusion

The Court finds that the Appellants' Motion to Suppress was properly denied and that the evidence against Vega was sufficient to sustain the verdict. The conviction against both Appellants is affirmed. A separate Order will follow.

**ENTER:**

Date entered: March 8th, 2010

_____/s/_____
**HONORABLE RAYMOND L. FINCH**
**SENIOR U.S. DISTRICT JUDGE**